| | |
|---|---|
| John C. Goodchild, III<br>Joshua Dorchak<br>Matthew C. Ziegler<br>**MORGAN, LEWIS & BOCKIUS LLP**<br>101 Park Avenue<br>New York, NY 10178-0060<br>Telephone: (212) 309-6000<br>Email: john.goodchild@morganlewis.com<br>Email: joshua.dorchack@morganlewis.com<br>Email: matthew.ziegler@morganlewis.com | David K. Shim<br>Matthew Kent Stiles<br>**MORGAN, LEWIS & BOCKIUS LLP**<br>One State Street<br>Hartford, CT 06103-3178<br>Telephone: (860) 240-2700<br>Email: david.shim@morganlewis.com<br>Email: matthew.stiles@morganlewis.com |

*Attorneys for Margot MacInnis, John Royle, and Chow Tsz Nga Georgia in their Capacities as Joint Provisional Liquidators and Foreign Representatives for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>GLOBAL CORD BLOOD CORPORATION,<br><br>Debtor in a Foreign Proceeding.[1] | Chapter 15<br><br>Case No. 22-_____ (____) |

**VERIFIED CHAPTER 15 PETITION FOR**
**RECOGNITION OF FOREIGN PROCEEDING AND RELATED RELIEF**

Margot MacInnis, John Royle, and Chow Tsz Nga Georgia (the "JPLs") are the court-appointed joint provisional liquidators for Global Cord Blood Corporation (the "Debtor") in a proceeding (the "Cayman Proceeding") commenced under the Cayman Islands Companies Act (2022 Revision) and pending before the Grand Court of the Cayman Islands, Financial Services Division (the "Grand Court"). On October 7, 2022, the JPLs commenced this Chapter 15 case by filing, on behalf of the Debtor and pursuant to sections 1504 and 1515 of the Bankruptcy Code, Official Form 401 (*Chapter 15 Petition for Recognition of a Foreign Proceeding*), accompanied

---

[1] The Debtor's Cayman Islands company registration number is 227732. The Debtor's registered office is located at Mourant Governance Services (Cayman) Limited, 94 Solaris Avenue, Camana Bay, PO Box 1348, Grand Cayman KY1-1108, Cayman Islands.

by this more detailed *Verified Chapter 15 Petition for Recognition of Foreign Proceeding and Related Relief* (together, the "Verified Petition"); the Application for an Order (I) Scheduling Recognition Hearing, (II) Specifying Deadline for Filing Objections and (III) Specifying Form and Manner of Notice (the "Notice Application"); the Declaration of Margot MacInnis in support of the Verified Petition and other relief (the "MacInnis Declaration"); and the Declaration of Nicholas Fox in support of the Verified Petition and other relief (the "Fox Declaration").

## PRELIMINARY STATEMENT

1. The purpose of Chapter 15 of the Bankruptcy Code is to provide effective mechanisms for dealing with cases of cross-border insolvency, with the express objectives of cooperation between United States courts, trustees, examiners, debtors and debtors in possession and the courts and other competent authorities of foreign countries; greater legal certainty for trade and investment; fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including the debtor; the protection and maximization of the debtor's assets; and the facilitation of the rescue of financially troubled businesses. *See, e.g.*, *In re Suntech Power Holdings Co., Ltd.,* 520 B.R. 399, 413 (Bankr. S.D.N.Y. 2014); 11 U.S.C. § 1501(a)(1)-(5)).

2. The JPLs seek precisely the type of relief that chapter 15 was designed to provide. Applying the law to the underlying facts as demonstrated below, the JPLs respectfully submit that: (i) the Cayman Proceeding is a "foreign main proceeding" within the meaning of sections 101(23) and 1502(4) of the Bankruptcy Code; (ii) the JPLs are the duly appointed "foreign representatives" of the Debtor within the meaning of section 101(24); (iii) the JPLs' Petition complies with all the requirements of section 1515 and Bankruptcy Rule 1007(a)(4); and (iv) recognition of the Cayman Proceeding would not be contrary to public policy under Bankruptcy Code section 1506. The

Cayman Proceeding and the Verified Petition meet all the requirements for recognition as a foreign main proceeding and the requested relief. This and other Courts have repeatedly recognized comparable proceedings as foreign main proceedings. *See, e.g.*, *In re Luckin Coffee Inc.*, Case No. 21-10228 (MG), Dkt. No. 48 (Bankr. S.D.N.Y. Feb. 5, 2021) (recognizing Cayman Islands provisional liquidation as foreign main proceeding); *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 701-02 (Bankr. S.D.N.Y. Aug. 24, 2017) (same); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399 (Bankr. S.D.N.Y. 2014) (same).

3. Accordingly, the JPLs respectfully request that this Court enter an order (a) recognizing the Cayman Proceeding as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code, (b) recognizing the JPLs as the Debtor's foreign representatives in connection therewith, (c) granting relief pursuant to section 1520 and further relief as described below under section 1521,[2] and (d) recognizing and enforcing in the United States the Order of the Cayman Islands Court dated September 22, 2022 (the "Order") whereby the JPLs were appointed.[3]

4. A certified copy of the Order is attached hereto as **Exhibit A**, in fulfillment of the requirement of Bankruptcy Code section 1515(b).[4] A Statement Identifying Foreign Proceedings is attached hereto as part of **Exhibit B**, pursuant to Bankruptcy Code section 1515(c). A list containing the names and addresses of all persons or bodies authorized to administer foreign proceedings of the Debtor, and all parties to litigation pending in the United States in which the

---

[2] Alternatively, if the Court does not recognize the Cayman Proceeding as a foreign main proceeding, the JPLs request that the Court grant the relief available under section 1521 of the Bankruptcy Code as a foreign non-main proceeding.

[3] The JPLs reserve the right to request expedited interim relief in advance of the recognition hearing in the event that urgent circumstances arise.

[4] The Grand Court no longer issues orders in hard copy; the blue court seal indicates its authenticity as a sealed court order. The JPLs' Cayman Islands counsel have had the attached copy of this order notarized, in lieu of other certification.

Debtor is a party at the time of the filing of this Verified Petition, is attached hereto as **Exhibit C**, pursuant to Bankruptcy Rule 1007(a)(4). A corporate ownership statement is attached hereto as **Exhibit D**, pursuant to Bankruptcy Rule 7007.1 and Local Bankruptcy Rule 1007-3.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and sections 109 and 1501 of the Bankruptcy Code.

6. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1410(1) because the Debtor's principal assets within the United States are within this district.

8. This is a core proceeding under 28 U.S.C. § 157(b)(2)(P), and the Court may enter a final order consistent with Article III of the United States Constitution.

9. The statutory predicates for the relief requested herein are sections 105(a), 362, 1504, 1507, 1509, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

## BACKGROUND

**I.    The Debtor's Business**

10. The Debtor is a Cayman Islands corporation, whose stock is listed on the New York Stock Exchange, although the NYSE temporarily halted trading in the Debtor's stock after the JPLs were appointed. MacInnis Declaration ¶¶ 9-11. The Debtor is a holding company that wholly owns certain companies that conduct the business of storing umbilical cord blood, mainly to enable parents to preserve their children's stem cells (the "Business"). *Id.* ¶ 12. The Business is conducted principally in the People's Republic of China ("PRC") and prior to the appointment of the JPLs was overseen from an office in Hong Kong. *Id.*

11. Prior to the appointment of the JPLs, the Debtor apparently had business relationships with several service providers based in the United States, including financial services

providers, accountants, and attorneys, and the Debtors announced a major transaction involving its acquisition of approximately 95% of the outstanding shares of common stock of Cellenkos Inc., which is a Delaware corporation based in Houston that does medical research. *Id.* ¶¶ 13-15.

## II.     Events Giving Rise to the Cayman Proceeding

12.    The Cayman Proceedings arose as the result of a proposed series of agreements between the Debtor, on the one hand, and Cellenkos and other entities, on the other hand, first announced publicly by the Debtor's Form 6-K filing with the U.S. Securities and Exchange Commission on April 29, 2022 (collectively, the "Transaction"). *See id.* ¶¶ 16-17. The full details of and around the Transaction – including the degree to which it was properly authorized (or not), the degree to which it was legal (or not), the extent to which it was consummated (or not), and the ultimate parties in interest – are highly disputed, and the JPLs' investigation into the Transaction has only recently begun. *See id.* ¶¶ 6, 17-18.

13.    In May 2022, in reaction to the proposed Transaction, the Debtor's majority shareholder, Blue Ocean Structure Investment Company Limited ("Blue Ocean"), commenced the Cayman Proceeding, alleging that, among other things: neither Blue Ocean nor its appointed Director was aware of the potential Transaction until reviewing the Form 6-K filing; no shareholder approval had been sought; the Debtor's Board's approval was rushed and forced and based on insufficient information during an insufficient timeframe of 62 hours; the Transaction involved undisclosed related parties, including GMHL and its directors; and the consideration to be paid by the Debtor was inflated. *See id.* ¶¶ 19-20.

14.    Blue Ocean sought the winding-up of the Debtor on grounds that (a) Blue Ocean had justifiably lost all trust and confidence that the assets and affairs of the Debtor were being properly managed; (b) that Blue Ocean believes that there is an urgent need to investigate the Debtor's affairs and conduct in relation to the Transaction, the forgery of the bank statements and

5

the unlawful payments (described in more detail below); (c) that the Debtor and its board are acting in a matter designed to cause oppression and prejudice to Blue Ocean and the Debtor's shareholders; and (d) that the board of the Debtor acted in breach of its fiduciary duties and the NYSE rules in approving the Transaction and failing to put the Transaction to the shareholders at an extraordinary meeting. *See id.* ¶ 21. Blue Ocean sought "alternative relief" pursuant to section 95(3) of the Companies Act, requesting that the Grand Court either (a) enjoin the Transaction, (b) order the Debtor to amend its Articles of Association to enhance shareholder protections, and (c) compel the Debtor to consider replacing its Board, or (f) order the Debtor to be wound up and appoint joint official liquidators. *Id.*

15. Blue Ocean obtained an injunction against the Debtor closing the Transaction, and that injunction was later amended and extended on consent. *See id.* ¶ 22. Meanwhile, Blue Ocean purported to convene an extraordinary shareholders' meeting, at which the Debtor's board members were purportedly removed, then the Debtor sought a ruling that that meeting and the decisions made there were invalid. *See id.* ¶ 23. As of late July, the Grand Court had lifted the injunction against the Transaction proceeding (although this was never "perfected" by a court order), based on the Debtor's testimony that the Transaction had been partly performed. *See id.* ¶ 24.

16. The Grand Court had not granted or denied the relief originally sought by Blue Ocean, but had noted its concerns about the Transaction, as follows: "On any view it is impossible at this stage to discern any easily comprehensible commercial rationale for the [Debtor], especially being a listed company, consummating and implementing an arrangement which was so financially and strategically significant with such a breath-taking combination of speed and stealth, particularly in circumstances where the [Debtor] was (as at April 28, 2022) under 'minority' rather

6

than majority shareholder control." *See id.* ¶ 25. The Grand Court also determined that Blue Ocean had a "good arguable case for succeeding in establishing that the Transaction was unlawful because it required shareholder approval," and found some of the Debtor's evidence to be "largely incredible on its face." *See id.*

17.     Blue Ocean filed an Amended Petition in September 2022, asserting that it had discovered evidence, which the Debtor had not rebutted, proving that the Debtor's testimony regarding partial performance of the Transaction was fraudulent, *id.* ¶ 26, and that the Debtor had secretly paid $500 million to companies owned by the former Debtor's Chairman over five years, *id.* ¶ 27. Blue Ocean also alleged that substantial further sums were stripped from the Debtor's subsidiaries and paid to the former Debtor's Chairman's companies within four days after Blue Ocean commenced the Cayman Proceeding. *Id.* ¶ 27.

18.     Blue Ocean requested that the Grand Court appoint joint provisional liquidators pursuant to section 104 of the Companies Act, and the Grand Court promptly granted that request, finding "clear and strong evidence of serious improper behaviour by the directors or some of the directors of the [Debtor]" and "clear risks as to maintaining the assets, and the integrity of the books and records, of the Company and its subsidiaries." *Id.* ¶¶ 28-29. Concluding, "it is difficult to imagine a stronger case for appointing provisional liquidators than the present situation," the Grand Court appointed the JPLs. *See id.* ¶¶ 29-30.

19.     The Grand Court's Order appointing the JPLs (**Exhibit A** hereto), among other things, suspends the powers of the Debtor's board of directors (¶ 9) and authorizes the JPLs to "carry on the business of the [Debtor]" (¶ 8(j)). *Id.* ¶¶ 30-31. The Order stays any "suit, action, or other proceedings" against the Debtor, except by leave of the Grand Court (¶ 14). *Id.* ¶ 31. The

7

Order authorizes the JPLs to seek "recognition of the JPLs and/or their appointment" in any "relevant jurisdiction" (¶ 10). Fox Declaration ¶ 35.

20. The JPLs are not aware of any other foreign proceedings within the meaning of Bankruptcy Code section 101(23) with respect to the Debtor. MacInnis Declaration ¶ 37.

## RELIEF SOUGHT

21. By this Verified Petition, the JPLs respectfully seek entry of an order, in the form attached as **Exhibit E**, providing the following relief:

(a) recognition pursuant to section 1517 of the Bankruptcy Code of the Cayman Proceeding as a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code;

(b) the relief available pursuant to section 1520(a) and 1520(b) of the Bankruptcy Code, in particular the authority to examine witnesses and take evidence pursuant to section 1520(a)(4); and

(c) such other and further relief as is appropriate under the circumstances pursuant to sections 105(a) and 1507 of the Bankruptcy Code.[5]

22. Entry of such an order will significantly aid the JPLs' efforts to conduct their investigation and manage the Debtor's affairs. Most of all, the JPLs need (i) the automatic stay, to preserve any funds or other assets of the Debtor that they may discover in the United States – which may include massive sums wrongfully transferred away from the Debtor – and (ii) the subpoena power, to compel disclosure from persons in the United States who they believe have information that would assist them in our investigation of the Transaction with Cellenkos and their pursuit of the Debtor's assets. *See* MacInnis Declaration ¶ 38.

---

[5] In the event the Court were to find that the Cayman Proceeding is a non-main foreign proceeding or that the relief sought herein is otherwise not available under section 1520, the JPLs request the same relief pursuant to sections 1507 and 1521(a)(1)-(2).

8

## BASIS FOR RELIEF

23. For the reasons set forth herein, supported by the MacInnis Declaration and the Fox Declaration, this Court should recognize the Cayman Proceeding as a foreign main proceeding under section 1517 of the Bankruptcy Code. The Cayman Proceeding is plainly a "foreign proceeding" within the meaning of Bankruptcy Code section 101(23). The JPLs are plainly "foreign representatives" within the meaning of Bankruptcy Code section 101(24). The Debtor's COMI is presumed to be the Cayman Islands, where its registered office has always been located, and there is no basis to rebut that presumption, especially since the JPLs are managing the Debtor's business and conducting their investigation into the Debtor's recent transactions from their offices in the Cayman Islands. *See, e.g.,* MacInnis Declaration ¶¶ 32-37. Accordingly, the Cayman Proceeding is a "foreign main proceeding" within the meaning of Bankruptcy Code section 1502(4). Having assets in New York City, the Debtor qualifies as a "debtor" under section 109(a) of the Bankruptcy Code. *See* MacInnis Declaration ¶ 14. Finally, the Verified Petition meets the requirements of Bankruptcy Code section 1515, as demonstrated below.

### III. The Cayman Proceeding is a Foreign Proceeding, and the JPLs are Foreign Representatives.

24. The Bankruptcy Code defines the term "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). This definition "is to be broadly construed." *E.g., In re Bd. of Dirs. of Telecom Argentina S.A.*, 2006 WL 686867, at *21, 22 (Bankr. S.D.N.Y. Feb. 24, 2006); MMG LLC, 256 B.R. 544, 550 (Bankr. S.D.N.Y. 2000) (same); *see* 2 Collier on Bankruptcy ¶ 101.23 (16th 2022) ("Courts have construed the definition of 'foreign proceeding' broadly.").

9

Accordingly, the definition "by its terms encompasses a broad array of types of proceedings …." *In re Netia Holdings S.A.*, 277 B.R. 571, 580-81 (Bankr. S.D.N.Y. 2002). The Cayman Proceeding is plainly one such "foreign proceeding."

25. The Cayman Proceeding is a collective judicial proceeding in a foreign country, i.e., the Cayman Islands; the appointment of a Provisional Liquidator (such as the JPLs) is an interim process within that judicial proceeding; the appointment of a Provisional Liquidator (such as the JPLs) is made under Part V of the Companies Act, which is a law relating to the insolvency or adjustment of a debt; the affairs of the Debtor are subject to the supervision of the Grand Court; and the proceedings (unless dismissed) are expected to result in the reorganization or liquidation of the Debtor, or, where the threshold for an official liquidation is reached, various minority protections under 95(3) Companies Act may be ordered, based on the results of the JPLs' pending investigation and other activities. Fox Declaration ¶¶ 32-33. Winding-up proceedings such as the Cayman Proceedings give all parties in interest the right to be heard, provide for an automatic stay of proceedings against the debtor, and otherwise benefit the debtor's stakeholders. *See* Fox Declaration ¶¶ 15-23. The JPLs, as officers of the Grand Court, serve as fiduciaries for the Debtor as a whole and exercise the powers over the Debtor's business that are granted by the Grand Court, subject to its supervision. *See* Fox Declaration ¶¶ 24-31. In cases such as the Cayman Proceeding, the interim appointment of the provisional liquidators can be expected to lead to the reorganization or the formal liquidation of the debtor, also under the Companies Act and subject to the Grand Court's supervision, depending on the outcome of their investigation and other efforts. *See* Fox Declaration ¶ 33.

26. In granting chapter 15 recognition to a Cayman Islands debtor called Ocean Rig UDW Inc., this Court discussed in detail how its provisional liquidation under the predecessor of

10

the Companies Act qualified as a "foreign proceeding," in light of the role of the JPLs and the purpose of the proceeding, among other things. *Ocean Rig*, 570 B.R. at 701-02. The Court concluded by noting that there appeared to be <u>no</u> precedent "in which a U.S. bankruptcy court found that "Cayman liquidation or scheme proceeding did <u>not</u> satisfy the requirements of section 101(23) …." *Id.* (emphasis added).

27. The Bankruptcy Code defines "foreign representative" as:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24). The JPLs are plainly "foreign representatives."

28. As noted above, the JPLs, as officers of the Grand Court, serve as fiduciaries for the Debtor as a whole and exercise the powers over the Debtor's business granted by the Grand Court, subject to its supervision. *See* Fox Declaration ¶¶ 24-31. It is the JPLs' investigation and other efforts that determine the path that the winding-up will take, whether reorganization or official liquidation (or otherwise). *See* Fox Declaration ¶ 33. And in any event, the JPLs are explicitly authorized "to act as the representative[s] of such foreign proceeding": paragraph 10 of the Order explicitly authorizes the JPLs "to take any such action as may be necessary or desirable to obtain recognition of the JPLs and/or their appointment … in any other relevant jurisdiction and to make applications to the courts of such jurisdictions …." *See* Fox Declaration ¶ 35; *cf. id.* ¶ 22 (Companies Act expressly enables Grand Court to recognize and lend assistance to foreign representatives of foreign companies in the Cayman Islands).

29. This Court, among others, has frequently found that liquidation proceedings brought pursuant to the Companies Act (or its predecessor statute) qualify as "foreign proceedings" for purposes of section 101(23), and that joint liquidators appointed and overseen by the Grand

11

Court qualify as "foreign representatives" for purposes of section 101(24). *See, e.g.*, *In re Luckin Coffee Inc.*, Case No. 21-10228 (MG), Dkt. No. 48 (Bankr. S.D.N.Y. Feb. 5, 2021) (recognizing Cayman Islands <u>provisional</u> liquidation as foreign main proceeding); *In re Ocean Rig*, 570 B.R. at 701-02 (same); *In re LDK Solar Co., Ltd.*, No. 14-12387 (PJW) (Bankr. D. Del. Nov. 21, 2014) [Docket No. 43] (same); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399 (Bankr. S.D.N.Y. 2014) (same); *In re Platinum Partners Value Arbitrage Intermediate Fund Ltd.,* Case No. 17-12269 (SCC) [Docket No. 12] (recognizing Cayman Islands <u>official</u> liquidation as foreign main proceeding); *In re AJW Offshore Ltd.*, Case No. 13-70078, (Bankr. E.D.N.Y. Feb. 5, 2013) [Docket No. 31] (same); *In re Saad Invs. Fin. Co. (No. 5) Ltd.*, No. 09-13985 (KG) (Bankr. D. Del. Dec. 17, 2009) [Docket No. 47] (same); *In re Millard*, 501 B.R. 644, 647 (Bankr. S.D.N.Y. 2013) (recognizing individual bankruptcies before Grand Court).

30. This Court should likewise recognize the Cayman Proceeding.

**IV.    The Cayman Proceeding is a Foreign Main Proceeding.**

31. The Bankruptcy Code requires that a foreign proceeding "shall be recognized" as a foreign main proceeding "if it is pending where the debtor has its center of main interests" ("COMI"). 11 U.S.C. § 1517(b)(1); see 11 U.S.C. § 1502(4) (defining "foreign main proceeding" as "a foreign proceeding pending in the country where the debtor has the center of its main interests"). The Cayman Proceeding is the Debtor's "foreign main proceeding" because the Debtor's COMI is in the Cayman Islands.

32. Although the Bankruptcy Code does not define "center of main interests," it provides that the location of the debtor's registered office is presumed to be its COMI. 11 U.S.C. §1516(c). In this case, the Debtor's registered office is located in the Cayman Islands. *See* MacInnis Declaration ¶ 9; Fox Declaration ¶ 40. There is no substantial evidence to rebut the presumption, and there is substantial evidence to affirm it, given that the JPLs' activities are based

12

in the Cayman Islands. *See* MacInnis Declaration ¶¶ 32-37; Fox Declaration ¶¶ 40-46; *see also In re ABC Learning Centres Ltd.*, 445 B.R. 318, 333 (Bankr. D. Del. 2010) (holding that debtor's registered jurisdiction was its COMI where debtor established this presumption and no evidence was presented rebutting it).

33. A foreign debtor's COMI is determined as of when the chapter 15 petition is filed. *See In re Fairfield Sentry Ltd.*, 714 F.3d 127, 137 (2d Cir. 2013). That determination should include the activities of the foreign representative at that time. *See, e.g., id.*; *In re Modern Land (China) Co., Ltd.*, 641 B.R. 768, 789 (Bankr. S.D.N.Y. 2022) ("Another factor supporting COMI being in the Cayman Islands is the ongoing restructuring proceeding itself.") (citing *see In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399 (Bankr. S.D.N.Y. 2014) (commencement of provisional Cayman proceedings, together with activities of liquidators, had effect of transferring holding company's COMI from China to Cayman prior to commencement of chapter 15 case)).

34. In this case as well, the JPLs' ongoing, extensive efforts with respect to the Debtor – including the coordination of the various legal, forensic and accounting teams, directing and coordinating the steps to take control of the subsidiary companies, directing and coordinating steps to take control of the assets and in taking such other action as is necessary to ensure the smooth running of the business insofar as possible, and to discharge their other duties and obligations – have been directed from the Cayman Islands (with the assistance of the joint provisional liquidator based in Hong Kong). MacInnis Declaration ¶¶ 33-34; Fox Declaration ¶¶ 39-43; *cf. Modern Land*, 641 B.R. at 783 (holding that debtor's COMI was the Cayman Islands and noting "this would have been an easier case if JPLs had been appointed"). The JPLs' management of the Debtor – including key aspects thereof such as the protection and safeguarding of assets and the investigation and reporting on the affairs of the Debtor – is, of course, subject to the supervision

13

22-11347-dsj    Doc 2    Filed 10/07/22    Entered 10/07/22 23:50:21    Main Document
Pg 14 of 17

of the Grand Court. MacInnis Declaration ¶ 34; Fox Declaration ¶¶ 44-45. Two of the three JPLs live in the Cayman Islands. MacInnis Declaration ¶ 36. Other than the Cayman Proceeding, the JPLs are aware of no pending "foreign proceeding" as defined in section 101(23) of the Bankruptcy Code with respect to the Debtor. MacInnis Declaration ¶ 37.

35. "Further, the fact that the Debtor is an exempted company does not jeopardize its ability to have a COMI in the Cayman Islands." *See Modern Land*, 641 B.R. at 790 (quoting *Ocean Rig*, 570 B.R. at 705 (noting that exempted companies "may still be *managed* from [the Cayman Islands]") (emphasis in original)); Fox Declaration ¶ 37. There should be no question that the holding-company Debtor, as opposed to its operating subsidiaries, is now managed by the JPLs in the Cayman Islands (some of which are themselves also based, incorporated, and have directors based, in the Cayman Islands). MacInnis Declaration ¶¶ 33-36; Fox Declaration ¶¶ 41-46. In short, the Debtor's "nerve-center," and thus its COMI, is the Cayman Islands. *See id.*

36. For all of the foregoing reasons, this Court should find that Debtor's COMI is the Cayman Islands and hold that the Cayman Proceeding is a foreign main proceeding.

V. **The Cayman Proceeding Meets All Other Requirements for Recognition**

37. In addition to being a foreign main proceeding whose petition is brought by duly appointed foreign representatives, *see* 11 U.S.C. § 1515(a), the Cayman Proceeding meets all other requirements for recognition under the Bankruptcy Code. The Verified Petition is accompanied by a certified copy of the Order issued by the Grand Court (**Exhibit A**), which evidences the appointment of the JPLs as joint provisional liquidators of the Debtor. *See* 11 U.S.C. § 1515(b). The Verified Petition also is accompanied by a declaration that contains a statement that there are no other foreign proceedings with respect to the Debtor known to the Liquidators (**Exhibit B**). MacInnis Declaration ¶ 37; *see* 11 U.S.C. § 1515(c). All documents supporting the Verified Petition are in English. *See* 11 U.S.C. § 1515(d).

38. The Verified Petition is also accompanied by a declaration containing the information required by Bankruptcy Rule 1007, including the disclosures required by Bankruptcy Rule 7007.1, a statement indicating that there are no other persons or entities known to the JPLs that are authorized to administer foreign proceedings with respect to the Debtor, and a statement indicating that the Debtor is not currently engaged in any active litigation in the United States (**Exhibit C**).

39. Finally, the requested relief is consistent with the goals of Chapter 15 and will promote the public policy of the United States of respecting foreign proceedings as articulated in, among other things, Bankruptcy Code sections 1501(a) and 1508. The requested relief plainly does not violate section 1506 and the conditions for recognition of the Cayman Proceedings as under section 1517(a)-(b) have been satisfied. *See* 11 U.S.C. § 1517(a).

40. For all of the reasons above, this Court should grant the Cayman Proceeding recognition as the Debtor's foreign main proceeding under section 1517 of the Bankruptcy Code.

## NOTICE

41. Notice of this Verified Petition will be provided to all parties listed in Exhibit B to the Notice Application filed contemporaneously herewith.

## NO PRIOR REQUEST

42. The JPLs have not previously sought the relief requested herein from this or any other court.

**CONCLUSION**

WHEREFORE, the JPLs respectfully request that this Court (a) grant the relief requested in this Verified Petition and enter an order in the form attached hereto as **Exhibit E** and (b) grant such other further relief and additional assistance as this Court may deem just and proper.

Dated: October 7, 2022
New York, New York

By: /s/ Joshua Dorchak
John C. Goodchild, III
Joshua Dorchak
Matthew C. Ziegler
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000
Email: john.goodchild@morganlewis.com
Email: joshua.dorchack@morganlewis.com
Email: matthew.ziegler@morganlewis.com

-and-

David K. Shim
Matthew Kent Stiles
**MORGAN, LEWIS & BOCKIUS LLP**
One State Street
Hartford, CT 06103-3178
Telephone: (860) 240-2700
Email: david.shim@morganlewis.com
Email: matthew.stiles@morganlewis.com

*Attorneys for Margot MacInnis, John Royle, and Chow Tsz Nga Georgia in their Capacities as Joint Provisional Liquidators and Foreign Representatives for the Debtor*

## VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: October 7, 2022
      Grand Cayman, Cayman Islands

_____
Margot MacInnis