John C. Goodchild, III
Joshua Dorchak
Matthew C. Ziegler
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY  10178-0060
Telephone: (212) 309-6000
Email: john.goodchild@morganlewis.com
Email: joshua.dorchack@morganlewis.com
Email: matthew.ziegler@morganlewis.com

David K. Shim
Matthew Kent Stiles
**MORGAN, LEWIS & BOCKIUS LLP**
One State Street
Hartford, CT 06103-3178
Telephone: (860) 240-2700
Email: david.shim@morganlewis.com
Email: matthew.stiles@morganlewis.com

*Attorneys for Margot MacInnis, John Royle, and Chow Tsz Nga Georgia in their Capacities as Joint Provisional Liquidators and Foreign Representatives for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>GLOBAL CORD BLOOD CORPORATION,<br><br>Debtor in a Foreign Proceeding.[1] | Chapter 15<br><br>Case No. 22-_____ (____) |

**DECLARATION OF NICHOLAS FOX IN SUPPORT OF (I) VERIFIED**
**CHAPTER 15 PETITION FOR RECOGNITION OF FOREIGN PROCEEDING AND**
**RELATED RELIEF AND (II) APPLICATION TO APPROVE NOTICE PROCEDURES**
**<u>PURSUANT TO CHAPTER 15 OF THE BANKRUPTCY CODE</u>**

I, Nicholas Fox, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1. I am outside legal counsel to the court-appointed Joint Provisional Liquidators (the "<u>JPLs</u>") of Global Cord Blood Corporation (the "<u>Debtor</u>") appointed pursuant to an order (the "<u>Order</u>") of the Grand Court of the Cayman Islands (the "<u>Grand Court</u>") dated September 22, 2022 in a proceeding therein (the "<u>Cayman Proceeding</u>") under the Cayman Islands Companies Act

---

[1] The Debtor's Cayman Islands company registration number is 227732.  The Debtor's registered office is located at Mourant Governance Services (Cayman) Limited, 94 Solaris Avenue, Camana Bay, PO Box 1348, Grand Cayman KY1-1108, Cayman Islands.

(2022 Revision) (the "Companies Act").  The Order is attached to the *Verified Chapter 15 Petition for Recognition of Foreign Proceeding and Related Relief* (the "Verified Petition")[2] as **Exhibit A**.

2.     I submit this Declaration in support of the Verified Petition and the application for entry of an order (i) scheduling a hearing on the relief requested in the Verified Petition, (the "Recognition Hearing"), (ii) setting a deadline by which all objections to the Chapter 15 petition must be filed, and (iii) approving the form of notice and manner of service for the Recognition Hearing.  I am an individual over the age of eighteen and, if called upon, could testify to all matters set forth herein.

3.     I am a Partner and the Local Practice Leader of the Litigation and Insolvency Department in the Cayman Islands office of Mourant, a law firm with expertise in the financial services sector and in the laws of the Cayman Islands, British Virgin Islands, Guernsey, and Jersey. I have over twelve years of experience of advising clients, including court-appointed Liquidators, on insolvency and financial services matters in the Cayman Islands.

4.     I am a Fellow of the International Association of Restructuring, Insolvency & Bankruptcy Professionals and a member of the Insolvency Lawyers' Association and the Recovery and Insolvency Specialists Association (Cayman).

5.     Although I am not a U.S. attorney and therefore do not purport to make any authoritative statements concerning matters of U.S. law, I am well acquainted with Chapter 15 ("Chapter 15") of 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") due to my experience advising clients on complex cross-border corporate restructurings and insolvencies.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Verified Petition.

6. My colleagues and I have been assisting the JPLs since their appointment in their efforts to take over control of the Debtor and protect the Debtor's interests for the benefit of its various stakeholders.

7. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me or verified by members of the Debtor's management and professionals, my review of relevant documents, which include the declaration of Margot MacInnis filed simultaneously herewith (the "MacInnis Declaration"), and/or my opinion based upon my experience and knowledge of the Debtor's industry, operations, and financial condition. To the extent that statements in this declaration are of my own legal opinion, they represent my views and understanding of the laws of the Cayman Islands as a practicing Cayman Islands attorney.

8. The JPLs have asked me to explain in general terms the relevant substantive Cayman Islands law and procedural rules relating to the liquidation and dissolution of insolvent Cayman Islands companies, and in particular how they relate to the Debtor, for the purpose of filing a petition for recognition of the Cayman Proceeding as a foreign main proceeding under Chapter 15. These issues fall squarely within my professional experience.

9. For the reasons set out herein and on the basis of the advice that I have received from U.S. counsel, it is my opinion that: (a) the JPLs qualify as "foreign representatives" of the Debtor in accordance with my understanding of 11 U.S.C. § 101(24); (b) the Cayman Proceeding constitutes a "foreign proceeding" in accordance with my understanding of 11 U.S.C. § 101(23); and (c) the Cayman Proceeding constitutes a "foreign main proceeding" within my understanding of the meaning of Sections 1502(4) and 1517(b)(1) of the Bankruptcy Code.

## BACKGROUND

10. I respectfully refer the Court to the MacInnis Declaration (¶¶ 9-38) for a recitation of the factual background to the Cayman Proceeding, the JPLs' appointment, and the current status of the JPLs' efforts on behalf of the Debtor and its constituents.

## APPLICABLE CAYMAN ISLANDS LAW

### Sources of Cayman Islands Law

11. The Cayman Islands are a British Overseas Territory. Initially administered as a dependency of the larger colony of Jamaica, formalised by the Cayman Islands Act of 1863, the Cayman Islands have been administered as a separate territory since the passing of the Jamaica Independence Act of 1962. The Cayman Islands are now a distinct legal jurisdiction whose relationship with the United Kingdom, the sovereign power, is defined by a constitution.[3]

12. The Cayman Islands' laws are derived from: (a) original local statutes enacted by the local Parliament (b) English common law brought to the Cayman Islands by early settlers, as adapted to local circumstances and subsequently developed and applied by the courts of the Cayman Islands; (c) statutes of England and Wales in existence at the time of settlement, as subsequently applied, amended, repealed and replaced by statutes and subsidiary legislation enacted in and applicable to the Cayman Islands; (d) Orders in Council made by prerogative Order of the British Sovereign and made specifically applicable to the Cayman Islands; and (e) statutes of the United Kingdom Parliament that have been expressly extended to apply to the Cayman Islands.

13. Where no specific local statutory provision applies, the courts of the Cayman Islands will apply English common law as adapted to the circumstances of the Cayman Islands.

---

[3] Having been established pursuant to the Cayman Islands Constitution Order 2009, S.I. 2009 No. 1379.

On questions governed by the common law, the doctrine of judicial precedent applies. The court of first instance is the Grand Court which will, as a matter of judicial comity, follow its own previous decisions unless they are shown to be wrong.[4] There is a right of appeal from the Grand Court to the Cayman Islands Court of Appeal. The final appellate court for the Cayman Islands is the Judicial Committee of the Privy Council (the "Privy Council") which sits in London and which is composed of members of the Supreme Court of the United Kingdom (the highest court in the United Kingdom, formerly known as the Judicial Committee of the House of Lords). The Grand Court is bound by decisions of the Cayman Islands Court of Appeal and by decisions of the Privy Council on appeals originating from the Cayman Islands.

14. There is an increasing body of jurisprudence in the Cayman Islands developed mainly over the last 40 years and reported in the Cayman Islands Law Reports. Notwithstanding that, it still regularly transpires that there is no local Cayman Islands authority on a particular issue. Where there is no Cayman Islands authority on a particular issue, the Cayman Islands courts will look to and apply decisions of the English courts and, less frequently, decisions of the courts of other Commonwealth jurisdictions. Decisions of the English Court of Appeal and Supreme Court are regarded as highly persuasive, as well as decisions of the Privy Council on appeals originating from other Overseas Territories and Commonwealth jurisdictions. The decisions of the highest courts of other developed Commonwealth jurisdictions, such as Australia, New Zealand, Canada, and Hong Kong may also have persuasive effect on the decisions of the Grand Court, depending on their subject matter.

---

[4] *Re Bank of Credit & Commerce International*, CILR 56 [1994-95].

5

**Liquidation of Cayman Islands Companies**

15. The statutory provisions governing the liquidation of Cayman Islands companies are set out in Part V of the Companies Act, which is supplemented by the Companies Winding Up Rules 2018 (as amended) ("CWR"), the Insolvency Practitioners Regulations 2018 (the "IPR"), the Foreign Bankruptcy Proceedings (International Cooperation) Rules 2018 , and the Grand Court Rules 1995 (as revised) (the "GCR"), together with a detailed body of local case law. These provisions apply to companies formed and registered under the Companies Act or its predecessors, including companies that are formed as exempted companies.

16. The Companies Act provides that a Cayman Islands company may be wound up upon the application of a creditor or contributory of the company (or in the case of a regulated business, the Cayman Islands Monetary Authority).

17. A Cayman Islands company may be wound up by the Grand Court where (a) the company has passed a special resolution requiring the company to be wound up by the Grand Court, (b) the company has not commenced business within a year from its incorporation, or suspends its business for a whole year, (c) the period, if any, fixed for the duration of the company by the articles of association expires, or whenever the event, if any, occurs, upon the occurrence of which it is provided by the articles of association with the company is to be wound up, (d) the company is unable to pay its debts, or (e) the court is of the opinion that it is just and equitable that the company be wound up.

18. In any winding up, all interest holders have an opportunity to be heard by the Grand Court and no party will be prejudiced due to the proceeding being held in a foreign jurisdiction.

In addition, a general principle underlying the Cayman Islands' insolvency regime is that the claims of investors and creditors within the same classes are treated on a *pari passu* basis.[5]

19. Section 97(1) of the Companies Act provides that upon the entry of a winding up order or upon the appointment of a provisional liquidator, no suit or other proceeding may be commenced or continued against the company except with leave of the Grand Court and subject to such terms as the Grand Court may impose. This automatic stay serves to promote the ability of a liquidator or provisional liquidator to deal with the winding up of, or the provisional liquidation of, the entity in a collective and comprehensive manner.

20. The Companies Act specifically recognises and protects the rights of secured creditors to enforce their security in accordance with its terms, despite a debtor's insolvency, and secured creditors are able to realise their security outside of any Cayman Islands insolvency process commenced in relation to a Debtor.[6]

21. These provisions are assisted by the Cayman Islands having a well-established and highly experienced professional infrastructure that is known for its depth and breadth of experience in cross-border issues as well as its responsiveness and efficiency.

22. It should also be noted that Part XVII of the Companies Act ('International Co-operation')[7] enables the Grand Court to make orders for the purposes of recognising a foreign representative's right to act generally on behalf of, or in the name of, a foreign company in the Cayman Islands; to enjoin the commencement or to stay the continuation of legal proceedings or enforcement of any judgment against a debtor; to require a person in possession of information relating to the business or affairs of a debtor to be examined by, and produce documents to, him,

---

[5] Section 140 of the Companies Act.

[6] Section 142 of the Companies Act.

[7] Part XVII is closely modelled on the (former) section 304 of the Bankruptcy Code.

and to order the turning over to him of any property belonging to a debtor. The foreign representative must have been appointed in foreign bankruptcy proceedings, which would include proceedings for the reorganisation or rehabilitation of an insolvent debtor.[8]

23. In my experience, Cayman Islands liquidation proceedings are fair and equitable.

### Provisional Liquidators

24. At any time after the presentation of the winding up petition, pursuant to Section 104(1) and (2) of the Companies Act, the Grand Court has jurisdiction to appoint provisional liquidators on the application of a creditor or contributory, on the grounds that:

   a. There is a *prima facie* case for making a winding up order; and

   b. The appointment of the provisional liquidators is necessary in order to:
      i. prevent the dissipation or misuse of the company's assets;
      ii. prevent the oppression of minority shareholders; or
      iii. prevent mismanagement or misconduct on the part of the company's directors.

*See* Sept. 22, 2022 Judgment (Exhibit G to the MacInnis Declaration) ¶¶ 13-15.

25. A Provisional Liquidator is an officer of the Grand Court and is an agent of the company and shall carry out only such functions as the Grand Court may confer. He or she owes fiduciary duties to a company to act for proper purposes, in good faith and in the interests of the company as a whole. The interests of the company as a whole are represented by the interests of the unsecured creditors of the company where the company is insolvent, the unsecured creditors and shareholders where the company is of doubtful solvency, or the shareholders where the company is solvent. He or she does not represent any creditor or class of creditors or any shareholder or class of shareholders; he or she is required to be independent of the management of

---

[8] Section 240 of the Companies Act.

the company and its stakeholders and is required to behave in an even-handed fashion between stakeholders or groups of stakeholders amongst themselves. Nevertheless, a Provisional Liquidator will often canvass the views of the interested stakeholders, and some form of committee will usually be constituted to facilitate this.

26. As set out above, if the Grand Court appoints a Provisional Liquidator, then pursuant to section 97(1) of the Companies Act, "no suit, action or other proceedings, including criminal proceedings, shall be proceeded with or commenced against the company except with leave of the [Grand] Court" pending the hearing of the petition, *i.e.*, during the currency of the provisional liquidation. This provision restrains proceedings in the Cayman Islands courts. Although not expressed as operating extra-territorially, the Grand Court may restrain any person that is subject to its jurisdiction from continuing or commencing proceedings against the company outside the jurisdiction that would distort the distribution of the company's assets and exercise its inherent but discretionary power to restrain foreign proceedings.[9] The Grand Court will claim jurisdiction over any person that is present in the Cayman Islands or has submitted to the jurisdiction (for example by filing a claim in the liquidation).[10]

27. Section 97(1) does not prevent a stakeholder from asking the Grand Court to convert the provisional liquidation into an official liquidation and wind up the company and has no application to secured creditors, who, as set out above, are entitled to take steps to enforce their security notwithstanding the provisional liquidation.

---

[9] *See In the Matter of Ardent Harmony Fund Inc (In Official Liquidation)* (Unreported, 31 May 2016) and also Dicey, Morris & Collins, *The Conflict of Laws* (16th ed. 2022) at 30-124 which refers to the equivalent provision of the English Insolvency Act of 1986.

[10] *See Rubin v. Eurofinance* SA [2013] 1 AC 236 (SC).

28. Where the Grand Court has already appointed a provisional liquidator, then at the hearing of the winding up petition the Grand Court may make one of the following orders:

   a. adjourn the adjudication of the petition unconditionally. The company and any creditor or shareholder (depending on whether the company is solvent, insolvent or of doubtful solvency) will then be at liberty to apply to the Grand Court at a future date to set a new hearing date for the adjudication of the petition;

   b. adjourn the adjudication of the petition conditionally to a specified date at which time the Grand Court will review the conduct of the provisional liquidation and determine whether it should continue, the company should be wound up or the proceeding dismissed and the provisional liquidator discharged. Creditors and/or shareholders (depending on whether the company is solvent, insolvent or of doubtful solvency) are entitled to be heard on these return hearing dates and put forward their views to the Grand Court.

   c. dismiss the petition. If the Grand Court dismisses the petition then the appointment of the provisional liquidator will be discharged and the directors of the company will resume the management of the company's affairs; or

   d. make a winding-up order and appoint official liquidators to wind up the company or where the threshold is met, make minority protection orders pursuant to section 95(3) of the Companies Act.

29. Where a winding up petition is presented, as here, by a shareholder, at the time of the presentation of the Petition a summons for directions must be issued after which the Grand Court will give such directions as it thinks appropriate for the hearing of the Petition and whether and if so by what means the Petition should be advertised. Where the Grand Court directs that the Petition should be advertised, the Grand Court will typically direct that the hearing date of the Petition must be advertised at least seven business days before the hearing date in a newspaper having circulation in a country where it is most likely to come to the attention of the company's stakeholders.[11]

---

[11] *See* CWR O.3, r.11 and 12.

30. The summons for directions will determine upon whom the Petition should be served, whether the Petition should be treated as an inter-partes proceeding and regulate how the members may support or oppose the Petition.

31. Pursuant to section 100(2) of the Companies Act, in the event a winding up order is made, the winding-up of the company is deemed to have commenced at the time of the presentation of the Petition.

## The U.S. Bankruptcy Code

A.  *The Cayman Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.*

32. I am advised by U.S. Counsel that "foreign proceeding" is defined in section 101(23) of the Bankruptcy Code as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the Debtors are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

33. Based on the advice I have received, I believe that the Cayman Proceeding satisfies this definition: it is a collective judicial proceeding in the Cayman Islands; the appointment of a Provisional Liquidator is an interim process within that judicial proceeding; the appointment is made under Part V of the Companies Act which is a law relating to the insolvency or adjustment of a debt and the affairs of the Debtor are subject to the supervision of the Grand Court. At this stage in the provisional liquidation the assets and affairs of the Debtor are subject to supervision by the Grand Court on the terms set in the Order, which proceedings (unless dismissed) are expected to result in the reorganization or liquidation of the Debtor, or, where the threshold for an

official liquidation is reached, various minority protections under 95(3) Companies Act may be ordered, based on the results of the JPLs' pending investigation and other activities.

B.  *The JPLs are "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code.*

34. I am also advised by U.S. Counsel that "foreign representative" is defined in section 101(24) of the Bankruptcy Code as:

> a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

35. Based on the advice I have received, I believe that the JPLs satisfy this definition. As fiduciaries and officers of the Grand Court, the JPLs are duly authorized and empowered by the Grand Court to act as a representative of the foreign proceeding. *See* Order ¶ 10.

C.  *The Cayman Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code.*

36. I am also advised by U.S. Counsel that a "foreign main proceeding" is defined as "a foreign proceeding pending in the country where the debtor has the center of its main interests," and that an entity's center of main interests will turn on various factors, such as (i) the location of the debtor's registered office; (ii) the location of the debtor's assets; (iii) the location of the debtor's books and records; (iv) the location of the majority of the debtor's creditors; (v) the commercial expectations and knowledge of the debtor's creditors; and (vi) the location of those who actually manage the debtor, in each case, at the time the Petition is filed.

37. The Debtor is an "exempted company," as are the vast majority of companies (including publicly listed companies) registered in the Cayman Islands. By way of background, a company incorporated under the Companies Act may be established as an "exempted" company

or as an "ordinary" company. Both types of company are required to make certain annual statutory filings with the Registrar. However, an exempted company differs in that it is prohibited from undertaking business in the Cayman Islands except in furtherance of its business carried on outside the Cayman Islands,[12] specifically it may effect and conclude contracts in the Cayman Islands and exercise in the Cayman Islands all of its powers necessary for the carrying on of its business outside the Cayman Islands (so it may employ staff or agents in the Cayman Islands or have offices in the Cayman Islands in furtherance of its business outside the Cayman Islands, once it has obtained any appropriate trade licences). Nothing relating to the prohibitions in respect of an exempted company acts to restrict the activities and functions of a provisional or official liquidator within the Cayman Islands.

38. The Debtor, registered by way of continuation in the Cayman Islands on 30 June 2009 under the Companies Act, historically exercised in the Cayman Islands its powers consistent with those of an exempted company. The Debtor's registered office was located at Conyers Trust Company (Cayman) Limited, 2nd Floor, Cricket Square, PO Box 2681, Grand Cayman KY1-1111, Cayman Islands and Debtor was required to submit its annual filings to the Registrar of Companies in the Cayman Islands.

39. Pursuant to paragraph 9 of the Order, the powers of the Board of Directors of the Company have been suspended and the JPLs now exercise all powers of the Board insofar as they are consistent with the Order. Accordingly, The JPLs have not only continued the Debtor's prior practice but also urgently sought to centralize the management of the Debtor's operations in the Cayman Islands.

---

[12] Requirements are such that the operation of the proposed company must be "conducted mainly outside the [Cayman] Islands." *See* Part VII of the Companies Act. Exempted companies are also required to file an annual return with the Registrar to this effect, along with its annual fees.

13

40. First, since their appointment, the JPLs have transferred the Debtor's registered office to Mourant Governance Services (Cayman) Limited, 94 Solaris Avenue, Camana Bay, PO Box 1348, Grand Cayman KY1-1108, Cayman Islands.

41. Second, since their appointment, all steps with respect to the Debtor have been directed from the Cayman Islands by the JPLs (with the assistance of Chow Tsz Nga Georgia, one of the joint provisional liquidators, who is based in Hong Kong). Such steps include the coordination of the various legal, forensic and accounting teams, directing and coordinating the steps to take control of the subsidiary companies, directing and coordinating steps to take control of the Debtor and its subsidiaries books and records, investigating the Debtor's management and related parties more broadly, directing and coordinating the steps to track down the Debtor's and its subsidiaries assets, communicating with the Debtor's stakeholder and in taking such other action as is necessary to ensure the smooth running of the business insofar as possible and to discharge the duties and obligations under the Order.

42. To assist the Court in assessing the steps that are being taken from the Cayman Islands at this stage, it may be of assistance to set the key provisions of the Order (at paragraphs 6 to 8) which set out the extensive powers and authority, including:

   a. The power to take possession of, collect and get in the property of the Debtor and for that purpose to take all such proceedings as they consider necessary;

   b. The power to do all acts and execute, in the name and on behalf of the Debtor, all deeds, receipts and other documents and for that purpose to use, when necessary, the Debtor's company seal;

   c. The power to discharge all costs, expenses and debts incurred by the Debtor as expenses or disbursements properly incurred in the provisional liquidation;

   d. The power to do all other things incidental to the exercise of their powers.

   e. The power to engage staff (whether or not as employees of the Debtor) to assist in the performance of their functions as JPLs;

f.  The power to engage attorneys and other professionally qualified persons to assist them in the performance of their functions;

g.  The power to make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the company or for which the company may be rendered liable;

h.  The power to bring or defend any action or other legal proceeding in the name and on behalf of the Debtor other than the Petition;

i.  The power to commence winding up proceedings and/or any insolvency process in the Cayman Islands or any other country in respect of any subsidiaries of the Debtor;

j.  The power to ascertain, demand, receive and give valid receipts for and protect the moneys, properties, securities, debts and things in action and all other assets of the Debtor, whether within or outside the jurisdiction of the Grand Court and for that purpose to take all such proceedings as they consider necessary;

k.  The power to collect, get in, inspect, review, secure, take possession of and copy the books, records, and documents of the Debtor and its subsidiaries (whether in hard copy, electronic form or otherwise), with or without the assistance of the Grand Court or a court of competent jurisdiction, in order to: (i) ascertain, and conduct investigations of, the affairs of the Debtor and its subsidiaries; (ii) prevent destruction and/or alteration of those documents and for those purposes to take all such proceedings as the JPLs consider necessary, including but not limited to:

   i.  requiring any of the directors and/or former directors of the Debtor and its subsidiaries to provide to the JPLs any documents and/or information of the Debtors and its subsidiaries in their possession or control; and

   ii. requiring any service providers of the Debtors and its subsidiaries to provide to the JPLs any documents and/or information in their possession or control which the Debtors and/or any of its subsidiaries has a right to receive;

l.  The power to do all such things as may be necessary or expedient for the protection or recovery of the Debtor's property at law or in equity in such jurisdictions as may be appropriate including, without limitation, in the Cayman Islands, BVI, PRC and Hong Kong;

m.  The power to examine individuals on oath or otherwise, both with or without the assistance of the Grand Court or any court of competent jurisdiction, if the JPLs consider it expedient for the purpose of protecting the assets of the Debtor including as part of the investigation referred to in paragraph 5 of the Order;

n.  The power to take control of the subsidiaries of, and other companies controlled by, the Debtor (or such shares of subsidiaries or companies controlled by the Debtor),

15

  to manage the affairs or carry on or close or cease to operate all or any part of the business of such subsidiaries or companies (in accordance with the constitutional documents of such companies) if the JPLs consider it expedient for the purpose of protecting the assets of the Debtor, including as part of the investigation referred to in paragraph 5 of the Order;

o. With the leave of the Grand Court, to call or cause to be called such meetings of shareholders of the Debtor or its subsidiaries or companies otherwise controlled by the Debtor (in accordance with the constitutional documents of such companies) as the JPLs consider it necessary to remove directors or appoint additional directors to the Boards of Directors of such companies as the JPLs consider expedient for the purpose of protecting the assets of the Debtor including by assisting with the investigation referred to in paragraph 5 of the Order;

p. The JPLs have the power to do all such things as may be necessary or expedient to freeze or preserve assets held by any person or entity, whether a related party or otherwise, against which the Debtor has a claim and where there is a risk of dissipation in such jurisdictions as may be appropriate including, without limitation, in the Cayman Islands, BVI, the PRC, and Hong Kong;

q. The power to carry on the business of the Debtor, save that the JPLs shall not make payment on any indemnity save with further order of the Grand Court;

r. The power to communicate with and carry out any necessary filings with regulatory bodies as appropriate, including, without limitation, the Cayman Islands Registrar of Companies, the Cayman Islands Monetary Authority, the New York Stock Exchange and the US Securities and Exchange Commission, in the name and on behalf of the Debtor;

s. The power to appoint agents in the Cayman Islands, BVI, PRC and Hong Kong and elsewhere to do any business contemplated by the Order which they are unable to do themselves or which can more conveniently be done by an agent;

t. The power to terminate, complete, or perfect any agreements or transactions relating to the business of the Debtor including, without prejudice to the generality of this power, to novate or assign any such agreements or transactions, so far as may be necessary for the purpose of managing the affairs of the Debtor and protecting the assets of the Debtor;

u. The power to open or to close any bank accounts in the name and on behalf of the Debtor and to open any bank accounts on behalf of the Debtor (in provisional liquidation) for the purpose of paying the costs and expenses of the provisional liquidation;

v. The power to render and pay invoices out of the assets of the Debtor for their own remuneration at the rates prescribed by the Insolvency Practitioners' Regulations 2022 (IPRs) together with all reasonable costs, charges and expenses of their attorneys, and all other agents, managers, accountants or other persons that the JPLs

      shall employ on an account basis and subject to final approval by the Grand Court in accordance with paragraph 9(p) of the Order;

w. Pursuant to Regulation 10 of the IPRs the JPLs shall apply to the Grand Court for the approval of their remuneration, such application being made on notice to the Debtor;

x. The power to employ, appoint, and to dismiss officers and employees of the Debtor, including the current directors of the Debtor; and

y. The power to effect insurance in relation to the Debtor's business, assets and operations.

43. As set out above, the Grand Court exercises close supervision of all steps taken under the Order and as such (*see* paragraph 12), it expects to be regularly updated, including by reports to be submitted by the JPLs with 28 days, and again within 70 days, after the date of their appointment.

44. In practice, this means that not only is the management of the Debtor being conducted from within the Cayman Islands but that key aspects of that management such as the protection and safeguarding of assets and the investigation and reporting on the affairs of the Debtor are subject to the supervision of the Grand Court.

45. For the foregoing reasons, I believe it is clear that the Debtor's "nerve center" at this stage is the Cayman Islands and, based on the advice I have received, that accordingly the Debtor's COMI is in the Cayman Islands.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct to the best of my knowledge.

Date:   October 7, 2022
           Grand Cayman, Cayman Islands

                                                         Nicholas Fox
                                                         *Partner* - Mourant Ozannes (Cayman) LLP