| | |
|---|---|
| John C. Goodchild, III | David K. Shim |
| Joshua Dorchak | Matthew Kent Stiles |
| Matthew C. Ziegler | **MORGAN, LEWIS & BOCKIUS LLP** |
| **MORGAN, LEWIS & BOCKIUS LLP** | One State Street |
| 101 Park Avenue | Hartford, CT 06103-3178 |
| New York, NY 10178-0060 | Telephone: (860) 240-2700 |
| Telephone: (212) 309-6000 | Email: david.shim@morganlewis.com |
| Email: john.goodchild@morganlewis.com | Email: matthew.stiles@morganlewis.com |
| Email: joshua.dorchak@morganlewis.com | |
| Email: matthew.ziegler@morganlewis.com | |

*Attorneys for Margot MacInnis, John Royle, and Chow Tsz Nga Georgia in their Capacities as Joint Provisional Liquidators and Foreign Representatives for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>GLOBAL CORD BLOOD CORPORATION,<br><br>Debtor in a Foreign Proceeding.[1] | Chapter 15<br><br>Case No. 22-11347 (DSJ) |

**FOREIGN REPRESENTATIVES' REPLY IN FURTHER SUPPORT OF**
**RECOGNITION OF FOREIGN PROCEEDING AND RELATED RELIEF**

The court-appointed JPLs submit this reply and the Reply Declaration of Nicholas Fox (the "Fox Reply Declaration") in further support of the Verified Petition and in response to the Objection and supporting declarations filed by Golden Meditech Stem Cells (BVI) Company Limited ("GMSC") [Docket Nos. 12-14] and Statement in Support of the Objection [Docket No. 16] (the "Supporting Statement") filed by Mark D. Chen, Dr. Ken Lu, Jennifer J. Weng, Jack Chow, and Jacky Cheng (the "Suspended Directors" and, with GMSC, the "Objectors").[2]

---

[1] The Debtor's Cayman Islands company registration number is 227732. The Debtor's registered office is located at Mourant Governance Services (Cayman) Limited, 94 Solaris Avenue, Camana Bay, PO Box 1348, Grand Cayman KY1-1108, Cayman Islands.

[2] Capitalized terms not defined herein are defined in the Verified Petition.

DB1/ 133707974.1

# PRELIMINARY STATEMENT

1.  The Grand Court (i) ordered the JPLs, as officers of that court and as fiduciaries for all stakeholders of the Debtor, to investigate a highly suspicious transaction and the potential theft of $664 million dollars from the Debtor, and (ii) authorized the JPLs to seek recognition of the Cayman Proceeding in this Court.  By the Verified Petition, the JPLs ask this Court for its assistance in conducting that investigation (*i.e.*, the subpoena power) and preserving the Debtor's assets (*i.e.*, the automatic stay).  Chapter 15 explicitly exists to provide assistance in "… the protection and maximization of the debtor's assets; and the facilitation of the rescue of financially troubled businesses."  The Cayman Proceeding qualifies as a "foreign proceeding," like numerous Cayman joint provisional liquidations before it.  That is true even though the JPLs currently believe the Debtor is solvent.  It is true even though, at this moment, the Debtor is not liquidating.

2.  The modest relief sought from this Court – *i.e.,* recognition of the Cayman Proceeding and assistance with the JPLs' investigation – could not conceivably offend or injure any party in interest, unless they have something to hide.  Enter the Objectors – none of them creditors or significant shareholders of the Debtor, and most of them residing outside the U.S. – in an attempt to convince this Court to send the JPLs packing.

3.  The Objectors' purported legal objections to the Verified Petition are based upon mischaracterizations of the Cayman Proceeding and the JPLs.  The most blatant is that the JPLs are somehow beholden to Blue Ocean.  The Cayman Proceeding was commenced by Blue Ocean, but the Grand Court's order appointed the JPLs as fiduciaries for the Debtor, with duties running to all stakeholders and supervision by the Grand Court.  Another mischaracterization is that the Cayman Proceeding is a "two-party" dispute between Blue Ocean and GMSC.  That was never true, because multiple shareholders filed statements in support of the petition at the

commencement of the Cayman Proceeding; it is clearly untrue now that the JPLs have been appointed. The Objectors' misstatements are intended to justify their restrictive interpretation of "foreign proceeding." But interpreted broadly, as this Court has instructed it should be, the term easily encompasses the Cayman Proceeding.

4.   The Objectors' real concern, which all their block quotes from the UNCITRAL Enactment Guide can't hide, is that the truth about the Cellenkos Transaction and the missing $664 million will come out. The need for investigation into this apparent fraud on the Debtor led the Grand Court to appoint the JPLs and to conclude, "it is difficult to imagine a stronger case for appointing provisional liquidators than the present situation." That missing money was supposed to have been paid to GMSC's affiliate; curious that GMSC wants to cut off an investigation into it. Why would the Objectors – who, since they do not reside in the U.S., are not likely to be burdened by the relief the JPLs request – try to prevent court-appointed fiduciaries from doing their court-ordered duty to uncover the truth about the Debtor's finances?

5.   The conduct of the Objectors outside this Court raises the same question. GMSC's affiliates have refused to respond to the JPLs' information requests. The Suspended Directors presumably caused, or at least failed to prevent, the shuttering of the Hong Kong headquarters, the removal of the Debtor's books and records, and other efforts to prevent the JPLs from taking control of the Debtor's operating subsidiaries. Meanwhile, openly flouting the Grand Court's Order, the Suspended Directors portray themselves to this Court as "stewards" and representatives of the Debtor, even though the Order suspended their powers, and they refuse to cooperate in any way with the JPLs' investigation, even though the Order expressly requires them to do so.

6.   The Objectors' attempt to derail the JPLs' straightforward Verified Petition is meritless. The relief sought therein should be granted.

# ARGUMENT

7. The Objectors concede that the Cayman Proceeding is entitled to recognition <u>except</u> that it allegedly fails to satisfy three of the seven elements of the term "foreign proceeding." However, based on the precedent of this Court and other bankruptcy and district courts (all of which prevail over the foreign decisions and the Guidebook relied upon by GMSC), the Cayman Proceeding satisfies these three elements as well. The Objectors' various complaints about Blue Ocean's conduct and the Grand Court's Order – not to mention their palpable fear that the JPLs will find out what really happened – are immaterial to this Court's decision on this Petition, as the Objectors concede. The Objectors do not dispute that the JPLs would be assisted by the subpoena power and automatic stay that would follow from this Court's recognition of the Cayman Proceeding or from discretionary relief under Section 1521. For all of these reasons, this Court should grant the relief sought in the Verified Petition.

**I.  The Cayman Proceeding is a Foreign Proceeding.**

8. GMSC opens its legal argument by encouraging this Court to be miserly in granting chapter 15 recognition, but the policy of this Court is the opposite – including on the very point in dispute, the definition of "foreign proceeding":

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). According to this Court, this definition "by its terms encompasses a broad array of types of proceedings …," *In re Netia Holdings S.A.*, 277 B.R. 571, 580-81 (Bankr. S.D.N.Y. 2002) and, moreover, "is to be broadly construed," *e.g., In re Bd. of Dirs. of Telecom Argentina S.A.*, 2006 WL 686867, at *21, 22 (Bankr. S.D.N.Y. Feb. 24, 2006); *MMG LLC*, 256 B.R. 544, 550 (Bankr. S.D.N.Y. 2000) (same); *see* 2 Collier on Bankruptcy ¶ 101.23 (16th ed.

2022) ("Courts have construed the definition of 'foreign proceeding' broadly."). As is demonstrated below, GMSC's interpretations of the three disputed elements of this term are based on mischaracterizations of the Cayman Proceedings and in some respects are overly restrictive as well.[3]

### A. The Cayman Proceeding is a Collective Proceeding.

9. GMSC argues the Cayman Proceeding is not a "collective" proceeding. The Bankruptcy Code does not define the term, but the courts agree – and the parties here agree – that a "collective" proceeding is one "for the benefit of all creditors generally rather than for a single creditor or class of creditors," *e.g., In re Ashapura Minechem Ltd.*, 480 B.R. 129, 140 (S.D.N.Y. 2012), as opposed to "a receivership … for the benefit[] of a single secured creditor," *e.g., In re Irish Bank Resolution Corp. Ltd.*, No. 13-12159 (CSS), 2014 WL 9953792, at *14 (Bankr. D. Del. Apr. 30, 2014); *see In re Betcorp Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009) (issue is prohibiting "private remedies"). GMSC isn't wrong about the definition, it's wrong about the Cayman Proceeding. *See* Fox Reply Decl. ¶¶ 23-28.

10. First and foremost, even assuming that the Cayman Proceeding, which was supported by several shareholders, "was commenced to benefit Blue Ocean," the situation today is this: the Grand Court appointed the JPLs as officers of the court and as fiduciaries for <u>all</u> stakeholders of the Debtor collectively, with no privilege given to Blue Ocean or any other shareholder or creditor. *See id.* ¶¶ 8-13, 15-22. The JPLs, as officers of the Grand Court, serve as

---

[3] GMSC actually opens its argument (¶¶ 33-36) by admitting that it is merely a contingent creditor or transferee of a shareholder of the Debtor, inexplicably asserting a "pecuniary interest" affected by the relief sought in this proceeding, and asserting without any basis whatsoever that "the JPLs have indicated that they may use this Chapter 15 proceeding … against GMSC in the Cayman Proceeding and the BVI Proceeding … ." In short, GMSC lacks standing as well as credibility. *See, e.g., In re Innkeepers USA Trust*, 448 B.R. 131, 144 (Bankr. S.D.N.Y. 2011) (citing *In re Refco, Inc.*, 505 F.3d 109, 117 n.10 (2d Cir. 2007)). GMSC's objection could and should be overruled for this reason alone.

fiduciaries for the Debtor as a whole and exercise those powers over the Debtor's business that are granted by the Grand Court, subject to its supervision. *See id.* ¶¶ 24-31.

11. GMSC portrays the Cayman Proceeding as being about shareholders, not creditors, but that distinction is not the point of a "collective" proceeding. The point is whether all parties in interest within a given class or category are treated alike, and there should be no question that the Cayman Proceeding qualifies, as to shareholders, and as to creditors. Fox Reply Decl. ¶¶ 23-28. In any case, GMSC is simply wrong that "the interests of creditors are not being considered in the Cayman Proceeding" because the Grand Court has not yet entered a winding up order. In fact, the creditors have access to information about, and the potential right to participate in, the Cayman Proceeding. *See id.* ¶ 24. Winding-up proceedings such as the Cayman Proceedings give all parties in interest the right to be heard, provide for an automatic stay of proceedings against the debtor, and otherwise benefit the debtor's stakeholders. *See id.* ¶¶ 15-22. The JPLs still presume the Debtor is solvent and will be able to pay the creditors in full; if these circumstances should change, so would the JPLs' focus. *See id.* ¶ 24.

12. In short, Blue Ocean will be treated *pari passu* with other shareholders in the Cayman Proceeding; in this sense and otherwise, it is a collective proceeding. *See, e.g., Ashapura*, 480 B.R. at 140; Fox Reply Decl. ¶¶ 8-11, 19-22, 28.

### B. The Cayman Proceeding is Under a Law Relating to Insolvency or Adjustment of Debt.

13. GMSC argues that the Cayman Proceeding is not being conducted "under a law relating to insolvency or adjustment of debt." But the Cayman Proceeding is undisputedly governed by the Cayman Companies Act, which undisputedly governs the insolvency or adjustment of debt of Cayman companies. Fox Reply Decl. ¶¶ 30-31; *see Ashapura*, 480 B.R. at 144 (India's Sick Industrial Companies Act of 1985, <u>as a whole</u>, "on its face, constitutes a law that

relates to insolvency or adjustment of debt within the meaning of Section 101(23)."); *Betcorp*, 400 B.R. at 281-82 (Australia's Companies Act, <u>as a whole</u>, "deals with corporate insolvency and allows for the adjustment of debts," despite "regulat[ing] the whole of the corporate life-cycle"). It does not matter that the Debtor is currently presumed to be solvent. "Importantly, this element does not require the company to be either insolvent or to be contemplating using the provisions of [foreign] law to adjust any debts." *Betcorp*, 400 B.R. at 282. What matters is that the Companies Act has a "unified structure of the external administration provision" and "sub-parts" that "contain provisions that deal with corporate insolvency," so that the foreign representative "has the statutory ability to alternate between various remedial measures as warranted by the circumstances." *Id.*; *see Ashapura*, 480 B.R. at 138; Fox Reply Decl. ¶¶ 30–33.

14. Promoting a more restrictive interpretation, GMSC essentially argues that section 95(d) of the Companies Act (which admittedly relates to insolvency) is a different "law" than section 95(e) of the Companies Act (which allegedly does not). That cannot be right, that two subsections of a single section of a part of an act are different "laws" – the "law" must be the act, as this Court has held. *See Ashapura*, 480 B.R. at 144; *Betcorp*, 400 B.R. at 281-82. But even if these consecutive subsections <u>were</u> different laws, the latter is certainly "relating to" the former and thus "relating to insolvency." Fox Reply Decl. ¶¶ 32-34, 41. Among other reasons, the JPLs' duties under section 95(e) could – and hopefully won't – lead to the liquidation of an insolvent Debtor or a scheme of arrangement adjusting its debts. *See id.* The practical matter that the degree of a debtor's financial distress may not be clear from the outset of a proceeding is presumably why the statutory definition explicitly includes an "interim proceeding" (*cf.* the JPLs' "provisional" status). *See* 11 U.S.C. § 101(2); *Betcorp*, 400 B.R. at 282 (foreign representative "has the statutory ability to alternate between various remedial measures as warranted by the circumstances"). The

nature of the Cayman Proceeding changed after the Grand Court was alerted to the apparent perjury and forgery and potential misappropriation of over half a billion dollars, and the nature of the Cayman Proceeding could change again.  *See* Fox Reply Decl. ¶¶ 5-7, 34-36.

15.     As a final point, the Grand Court itself must have considered the Cayman Proceeding to qualify as a foreign proceeding (or the equivalent), or the Order would not have authorized the JPLs expressly to seek "recognition" in foreign courts.  *See* Order ¶ 10.

### C.    The Purpose of the Cayman Proceeding is Reorganization or Liquidation.

16.     GMSC purports to question whether the purpose of the Cayman Proceeding is "reorganization or liquidation," because the Grand Court "has not entered a winding up order … and it may never do so."  The JPLs do not dispute that the Debtor is not liquidating today and may never need to do so, but the purpose of the Cayman Proceeding, since the JPLs were appointed, is indeed either reorganization or liquidation, preferably the former.  Fox Reply Decl. ¶¶ 37-41.

17.     The Bankruptcy Code does not define "reorganization," but the Supreme Court has stated, "[i]n proceedings under the reorganization provisions of the Bankruptcy Code, a troubled enterprise may be restructured to enable it to operate successfully in the future." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983); *see* 1 Collier on Bankruptcy ¶ 1.07[3] (16th ed. 2022) ("The essence of chapter 11 is to provide a mechanism for the reorganization of a financially distressed business or individual in the hope that a profitable and productive member of its economic community can once again emerge.").  There should be no dispute that the Debtor is currently a "troubled enterprise," given the potential theft of hundreds of millions of dollars in suspicious circumstances. Fox Reply Decl. ¶¶ 10-11, 34-35.  There should be no dispute that the Debtor is "restructuring," given the appointment of the JPLs, their suspension of the directors, the termination of the CFO and Chairperson, their moving of the Debtor's and subsidiaries' registered

offices to the Cayman Islands, and their supervision by the Grand Court. Fox Reply Decl. ¶¶ 39-43. And although GMSC focuses on solvency, there should be no dispute that a solvent debtor can "reorganize" – there have been several solvent debtor chapter 11 cases in recent years.

18.    Moreover, although the JPLs' goal is to restore the Debtor to successful operations, the current phase of the Cayman Proceeding may lead to <u>further</u> restructuring, including a scheme of arrangement or (in the worst-case scenario) a liquidation – that depends on the outcome of the JPLs' investigation. *See* Fox Reply Decl. ¶¶ 34-36. Again, the definition of "foreign proceeding" (i) explicitly includes "an interim proceeding," 11 U.S.C. § 101(23), and (ii) in this Court "is to be broadly construed," *e.g., Telecom Argentina*, 2006 WL 686867, at *21, 22. GMSC's support for a narrow, post-winding-up-only interpretation of "reorganization" is supported only by one decision from outside this Circuit and the Enactment Guide, and conflicts with broad precedent from this and other U.S. bankruptcy courts. Here, as with the question of "collective proceeding," GMSC's practical point is that "the Cayman Proceeding is simply a dispute between Blue Ocean and [the Debtor]," and that point is simply wrong. Fox Reply Decl. ¶¶ 11-13, 19-21, 25.

**II.    The Section 1782 Proceeding Is Not a Conspiracy Between Blue Ocean and the JPLs.**

19.    GMSC's attempt to tarnish the JPLs by accusing them of hiding their involvement in Blue Ocean's Section 1782 proceeding is easily debunked. When the Petition was filed on October 7, the JPLs had not participated in the Section 1782 proceeding and had no reason to mention it. Fox Reply Decl. ¶ 48. On October 17, the JPLs learned that the respondents in that case (one or more of which are GMSC's affiliates) had made inaccurate statements to the court about the extent of information available to the JPLs. *Id.* The JPLs provided Blue Ocean with a

declaration to file, to correct the record. *Id.* That is all there is to this supposed underhand conduct. *See id.* ¶¶ 49-50.[4]

20. It is worth noting, however, that while (a) GMSC is citing the discovery that Blue Ocean will obtain in the Section 1782 proceeding as a basis for this Court to deny the JPLs discovery in this proceeding, (b) the lead respondent in the Section 1782 proceeding, GMSC's affiliate Cellenkos, Inc. is citing the discovery that the JPLs will obtain in this Chapter 15 proceeding as a basis for the district court to deny Blue Ocean discovery. *See id.* ¶¶ 48-49. This is the kind of coordinated, contradictory tactics that courts rightly condemn as gamesmanship.

21. To be sure, the JPLs and Blue Ocean share a desire to figure out, among other things, whether the Cellenkos Transaction was a sham, why the Debtor's CFO apparently committed perjury and forgery, and where the Debtor's money went. *See id.* ¶¶ 49-50. That is not a conspiracy. It is a desire shared by every stakeholder of the Debtor that does not have something to hide.

### III. The Suspended Directors Are Violating the Order.

22. The Supporting Statement is a shoddy construct of complaint and self-justification that collapses upon the Suspended Directors. Their first substantive statement, that they "are GCBC's independent directors" (¶ 10), is not only misleading, it blatantly flouts the Grand Court's Order, which expressly suspended these directors' powers and authorized the JPLs to replace them. Order ¶ 9; Fox Reply Decl. ¶ 40. The Suspended Directors have no authority to speak for the

---

[4] GMSC makes two further arguments that are frivolous and thus worthy only of a footnote. (1) GMSC argues that the JPLs have failed to meet their burden of showing "how interests of creditors and other interested parties are sufficiently protected" from the JPLs' potential subpoena power (¶ 67). It is unclear why GMSC feels a need to speak for these respondents, who should have nothing to fear from a subpoena except some inconvenience, but if the respondents do have objections to the subpoenas as-served, they will be free to make them. (2) GMSC argues that Blue Ocean's Section 1782 proceeding – where the only requesting party is Blue Ocean and the only responding parties are the Cellenkos entities – is "the more appropriate forum" for the JPLs to pursue discovery from everyone in the U.S. with knowledge relevant to the JPLs' investigation. This argument is ridiculous on its face.

Debtor. *See id*. To the extent they are protesting the JPLs' appointment and defending their record in their individual capacities, they are too late and in the wrong court.

23. It is not surprising that the Suspended Directors are displeased with the Order, because it was based on the Grand Court's finding, among other things, "clear and strong evidence of serious improper behaviour by the directors or some of the directors of the [Debtor]." September 28 Judgment ¶ 28. Moreover, after Blue Ocean provided evidence that the Debtor's CFO had perjured himself and purposely proffered forged documents in an effort to conceal the whereabouts of more than $600 million of the Debtor's cash, the Grand Court noted "the seeming silence, or paralysis, on the part of the independent directors in the face of these shocking allegations about forgery." *Id.* ¶ 23. The Court continued: "One might have thought that if the independent directors were in fact capable of exercising control, that they would have taken steps by now to demonstrate very decisively that they were in fact putting the ship in order; that they were marginalising the crew who appeared to be guilty of misconduct and that the Court need have no concern that the Company's affairs going forward would be conducted in an orderly manner. Nothing of that sort has happened as far as the material before the Court is concerned[.]" *Id.* ¶¶ 23-24. Since the Grand Court made these observations in late September, the Suspended Directors still have not accepted the court's invitation to correct the record. *See* Fox Reply Decl. ¶¶ 44-46.

24. In arguing that they handled the Cellenkos Transaction competently, the Suspended Directors seem to be countering the Grand Court's finding that "it is impossible at this stage to discern any easily comprehensible commercial rationale for the Company, especially being a listed company, consummating and implementing an arrangement which was so financially and strategically significant with such a breath-taking combination of speed and stealth…." September 28 Judgment ¶ 57 (footnotes omitted).

25. To the extent the Suspended Directors "want to assure the Court that they [are] responsible stewards of GCBC …" (¶ 21), they should explain how they let hundreds of millions of dollars of the Debtor's cash disappear, or explain how they apparently let the Debtor's CFO commit perjury and forgery about the Cellenkos Transaction. *See* Fox Reply Decl. ¶¶ 35-36, 44-46. (GMSC likewise has never clarified whether, and why or why not, its affiliate GMPM actually received $664 million from the Debtors in April 2022. *See* Fox Reply Decl. ¶¶ 10-11.)

26. To the extent the Suspended Directors assert they are "ensur[ing] the Company's operations are in compliance with the statutory requirements in the Cayman Islands and other applicable law" (¶ 21), they should explain why they are violating the Grand Court's Order – not only by defying the Grand Court's suspension of their powers (¶ 9), but also by repeatedly refusing to provide <u>any</u> "documentation, information and assistance as the JPLs may request," as expressly ordered by the Grand Court (¶ 11). As noted above, the Suspended Directors have refused to cooperate with the JPLs at every turn. *See* Fox Reply Decl. ¶¶ 40-46.

27. The Suspended Directors never appeared in the Grand Court to protest Blue Ocean's allegations of perjury and forgery or the appointment of the JPLs that followed, but they have appeared here in this Court to attempt to block the JPLs from taking discovery from any person in the U.S. (which few, if any, of the Suspended Directors are) on the theory that the JPLs are worse stewards of the Debtor's business than they are. The recent record shows otherwise, and the Grand Court has ordered otherwise. There is only one reason why the Suspended Directors would be desperate to stall, and to prevent other persons from assisting, the JPLs' investigation.

28. In summary, the Suspended Directors' "Trust us, we've got this" message is not credible and only demonstrates why the JPLs need the power to compel testimony outside the Cayman Islands if they are going to succeed in their investigation.

**CONCLUSION**

WHEREFORE, the JPLs respectfully request that this Court (a) grant the relief requested in the Verified Petition and (b) grant such other further relief and additional assistance as this Court may deem just and proper.

Dated: November 7, 2022
New York, New York

By: */s/ Joshua Dorchak*
John C. Goodchild, III
Joshua Dorchak
Matthew C. Ziegler
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000
Email: john.goodchild@morganlewis.com
Email: joshua.dorchak@morganlewis.com
Email: matthew.ziegler@morganlewis.com

-and-

David K. Shim
Matthew Kent Stiles
**MORGAN, LEWIS & BOCKIUS LLP**
One State Street
Hartford, CT 06103-3178
Telephone: (860) 240-2700
Email: david.shim@morganlewis.com
Email: matthew.stiles@morganlewis.com

*Attorneys for Margot MacInnis, John Royle, and Chow Tsz Nga Georgia in their Capacities as Joint Provisional Liquidators and Foreign Representatives for the Debtor*